# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION
# IN ADMIRALTY

| | |
|---|---|
| PLATINA BULK CARRIERS PTE LTD, | Civil Action No.: 2:22-cv-1851-RMG |
| Plaintiff, | |
| vs. | **ORDER AND OPINION** |
| PRAXIS ENERGY AGENTS DMCC, PRAXIS ENERGY AGENTS LLC, and PRAXIS ENERGY AGENTS PTE LTD. | |
| Defendants. | |

Before the Court is Defendant Praxis Energy Agent LLC ("Defendant" or "Praxis U.S.")'s motion to dismiss. (Dkt. No. 10). Also before the Court is Plaintiff Platina Bulk Carriers PTE Ltd. ("Platina" or "Plaintiff")'s motion to deposit funds. (Dkt. No. 16). For the reasons set forth below, the Court denies Defendant's motion and grants Plaintiff's motion.

## I.     Background

Per its complaint, around October 18, 2019, Plaintiff as the time charterer/disponent owner of M/V OCEANMASTER ordered bunker fuel from Praxis Energy Agents DMCC ("Praxis Dubai"). (Dkt. No. 1 ¶ 12). The next day, pursuant to that order, bunker fuel was delivered to the M/V OCEANMASTER by Al Arabia Bunkering Company LLC ("Al Arabia") as physical suppliers. Praxis Dubai invoiced Platina $271,429.60 for the bunker fuel. (*Id.* ¶ 13). On October 21, 2019, Platina paid $271,429.60 to Praxis Dubai in satisfaction of its invoice for the bunker fuel delivered to the M/V OCEANMASTER. (*Id.* ¶ 14). However, Praxis Dubai never paid the physical supplier Al Arabia its invoice for the bunker fuel. (*Id.* ¶ 15). Because of the non-payment, Al Arabia obtained an arrest order against the M/V OCEANMASTER in Fujairah, U.A.E. and

1

arrested the vessel on November 27, 2019. (*Id.* ¶ 16). Praxis' decision to collect payment from the Plaintiff and then not to pay the physical supplier prompted this entire dispute and ensuing litigation. As the time charterer/disponent owner of the M/V OCEANMASTER, Platina warranted to the vessel Owner that it would keep the vessel free and clear of all liens, etc. Accordingly, Platina was obligated to resolve Al Arabia's claim despite having already paid Praxis Dubai for the same bunker fuel. (*Id.* ¶ 17). On December 2, 2019, Platina settled the claim with Al Arabia for a total of $148,472 and received from Al Arabia an assignment of its rights against Praxis Dubai up to the amount of the settlement. (*Id.* ¶ 18). While the settlement was being negotiated, the vessel remained under arrest until December 4, 2019 at 1200 hrs. local time when she was released. The damages suffered by Platina due to the time lost at Fujairah as a result of the arrest by Al Arabia totaled $147,335.90, plus attorneys' fees of $20,000. (*Id.* ¶ 19). The total principal amount of damages suffered by Platina due to Praxis Dubai's failure to pay Al Arabia is $315,807.90, plus interest from December 4, 2019. (*Id.* ¶ 20). On June 25, 2020, Plaintiff commenced an action in the United States District Court for the Southern District of New York (the "New York Action") against Praxis Dubai as well as its alleged alter egos, Praxis Energy Agents Pte Ltd. ("Praxis Singapore") and Praxis U.S. In the New York Action, Plaintiff seeks damages arising from Praxis Dubai's actions and to enforce the ensuing judgment against Praxis U.S. and Praxis Singapore as the alter egos of Praxis Dubai. As part of the New York Action, Plaintiff seeks a determination that Praxis U.S. and Praxis Singapore are alter egos of Praxis Dubai. The Praxis defendants moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(2), (3) and (6). The New York court denied Defendants' motion to dismiss holding that Platina stated a prima facie case for piercing the Defendants' corporate veil under an alter ego theory. *Platina Bulk*

*Carriers Pte Ltd. v. Praxis Energy Agents DMCC*, No. 20 CIV. 4892 (NRB), 2021 WL 4137528, at *6 (S.D.N.Y. Sept. 10, 2021).

On June 12, 2022, Plaintiff filed the instant complaint.

On June 17, 2022, this Court granted Platina's request for a Rule B attachment. (Dkt. No. 7). Platina served the writ of attachment on the garnishee of Praxis U.S.'s property, Cooper & Bilbrey, P.C., that same day.[1]

Defendant has moved to dismiss this action. (Dkt. No. 10). Plaintiff filed a response in opposition, (Dkt. No. 15), and Defendant filed a reply, (Dkt. No. 17).

Plaintiff, for its part, has moved to require Defendant to deposit the attached funds into the Court's registry. (Dkt. No. 16). Defendant filed a response in opposition, (Dkt. No. 18), and Plaintiff filed a reply, (Dkt. No. 19).

The parties' respective motions are fully briefed and ripe for disposition.

**II.    Law/Analysis**

    **a.    Defendant's Motion to Dismiss**

Defendant moves pursuant to Fed. R. Civ. P. 12(b)(2) (lack of personal jurisdiction) and 12(b)(3) (improper venue) to dismiss this case. (Dkt. No. 10 at 1).

In a Rule B attachment case, jurisdiction is derived from the attachment of the property of the defendant. A Rule B attachment case is, therefore, a *quasi in rem* action instituted for the purpose of (1) asserting jurisdiction over the defendant in personam through the property and (2)

---

[1] The attached property is a U.S. Treasury check for the benefit of Platina U.S. delivered to its attorneys, non-party Cooper & Bilbrey, P.C. The check consists of funds disbursed by the Court in an unrelated action, *Carl Schröter v. Smooth Navigation*, 2:20-cv-334-RMG, in which Defendant intervened.

3

to assure satisfaction of any judgment. *Woodlands Ltd. v. Nationsbank, N.A.*, 164 F.3d 628 (4th Cir. 1998) (citing *J. Lauritzen A/S v. Dashwood Shipping, Ltd.,* 65 F.3d 139, 141 (9th Cir.1995)).

The nature of the jurisdiction the court acquires by a Rule B attachment is properly denominated *quasi in rem* because any judgment rendered is limited to the value of the attached property. *DS-Rendite Fonds Nr. 108 VLCC Ashna GMBH & Co Tankschiff KG v. Essar Cap. Americas Inc.*, 882 F.3d 44, 47, 2018 A.M.C. 307, 2018 WL 722554 (2d Cir. 2018).

Defendant first argues, with little explanation, that this case should be dismissed because this Court does not have personal jurisdiction over it. (Dkt. No. 10 at 1).

The Court rejects the argument as it is contrary to the text and purpose of a Rule B attachment, which does not require as much. *See* Fed. R. Civ. P. Supp. Adm. R. B ("If a defendant is *not found* within the district when a verified complaint praying for attachment and the affidavit required by Rule B(1)(b) are filed, a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property—up to the amount sued for—in the hands of garnishees named in the process.") (emphasis added); *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 539 (4th Cir. 2013) (noting "the rule's purpose" is "to permit the attachments of assets wherever they can be found and not to require the plaintiff to scour the globe to find a proper forum for suit or property of the defendant sufficient to satisfy a judgment") (citing *Transportes Navieros y Terrestres S.A. de C.V. v. Fairmount Heavy Transp. N.V.,* 572 F.3d 96, 103 (2d Cir.2009)); *see also DS-Rendite*, 882 F.3d at 47 ("This is a classic *quasi in rem* proceeding. The plaintiff is seeking to assert a claim against a defendant, over whom the court does not (otherwise) have personal jurisdiction, by seizing property of the defendant (alleged here to be in the hands of a third party) . . . ."). Accordingly, the Court rejects Defendant's argument on this point.

Next, Defendant argues that the forum selection clause in the parties' contract requires that this attachment proceeding be brought in New York. Paragraph 22.02 states that "[A]ny disputes and/or claims arising in connection with these Conditions and/or any agreement governed by them, shall be submitted to the United States District Court for the Southern District of New York." General Terms and Conditions for the Sale of Marine Bunker Fuels and Lubricants, (Dkt. No. 1-1 at 7).

Forum selection clauses are "prima facie valid." *M/S BREMEN v. Zapata Off–Shore Co.,* 407 U.S. 1, 9–10 (1972) (reversing the presumption against forum selection clauses). A forum selection clause is viewed as mandatory when "it clearly limits actions to the courts of a specific locale" and permissive when it demonstrates consent to a particular forum without stating exclusivity. *BP Marine Americas, a Div. of BP Exploration & Oil Corp. v. Geostar Shipping Co. N.V.,* Civ. A. No. 94–2118, 1995 WL 131056, *4 (E.D.La. Mar.22, 1995) (unpublished) (citing *M/S BREMEN,* 407 U.S. at *2; *Caldas & Sons, Inc. v. Willingham,* 17 F.3d 123 (5th Cir.1994)).

The United States Supreme Court confirmed that forum selection clauses should be enforced under admiralty law unless enforcement is unreasonable or unjust under the circumstances. *M/S BREMEN,* 407 U.S. at 10, 15. There, the court answered the question whether the district court "should have exercised its jurisdiction to do more than give effect to the legitimate expectations of the parties, manifested in their freely negotiated agreement, by specifically enforcing the forum clause." *Id.* at 12. The case concerned a clause stating that "[a]ny dispute arising must be treated before the London Court of Justice." *Id.* at 3. The Court pointed out that including a forum selection clause eliminates uncertainties and inconveniences and that the parties likely factor the inclusion of such a clause into their negotiations. *Id.* at 13–14. A contractual forum

selection clause should control, the Court concluded, "absent a strong showing that it should be set aside." *Id.* at 15.

Despite its clarity on the treatment of forum selection clauses, the *M/S BREMEN* case did not involve attachment pursuant to Supplemental Rule B. *See id.* at 2. The Ninth Circuit faced that issue a decade later. *Polar Shipping Ltd. v. Oriental Shipping Corp.,* 680 F.2d 627, 631 (9th Cir.1982). The precise question was: "[w]hether, in an admiralty and maritime action where there is an enforceable foreign court selection clause, the district court, instead of unconditionally dismissing the action, may ensure the availability of security pending a determination of the merits in the contractually selected forum." *Id.* at 631. Relying on *M/S BREMEN*, the Ninth Circuit acknowledged that a valid forum selection clause generally warrants dismissal of the action. *Polar Shipping Ltd.,* 680 F.2d at 631. However, the court concluded that dismissal was not required in every action and that Supplemental Rule B may be used in certain cases to ensure the availability of security in case of a favorable judgment. *Id.* at 632.

The key to a court's decision whether to exercise jurisdiction over a Supplemental Rule B attachment is the language of the particular forum selection clause. *Id.* at 632. The clause at issue in the *Polar Shipping Ltd.* case stated that "(a)ny dispute arising under the charter shall be decided by the English Courts." *Id.* The Ninth Circuit found that the wording did not encompass security proceedings because they did not fit precisely within the word "dispute." *Id.* The Ninth Circuit held "that in an admiralty action, absent express intent to the contrary, a forum selection clause providing that all disputes under the charter will be determined by a selected foreign court neither precludes a plaintiff from commencing an action in the district court to obtain security by maritime attachment, nor prohibits the district court from ensuring the availability of security adequate to satisfy a favorable judgment by the selected forum." *Id.* at 633.

6

*Heidmar Trading, LLC v. Emirates Trading Agency, LLC*, No. H-11-3847, 2011 WL 5827300 (S.D. Tex. 2011), a case cited by Defendant, is instructive. In *Heidmar*, the court vacated a Rule B attachment where the forum selection clause stated, "Each party expressly submits to the **exclusive jurisdiction** of the Federal and State courts located in the State of New York and waives any right it may have to a trial by jury in respect to any proceedings relating to this Confirmation or the Transaction." *Id.* at *2, 6 (emphasis added). The court distinguished *M/S Bremen* and *Polar Shipping Ltd.* on the basis that the clause before it lacked the word "dispute" and contained the words "exclusive jurisdiction." *Id.* at *6; *see Teyseer Cement Co. v. Halla Mar. Corp.*, 583 F. Supp. 1268, 1271 (W.D. Wash. 1984) (dismissing attachment and posted security where forum selection clause stated all "disputes . . . shall be determined in Korea *to the exclusion of the courts of any other country*").

The Court finds that forum selection clause in the parties' contract here, (Dkt. No. 1-1 ¶ 22.02), does not require dismissal of this action. Unlike *Teyseer* and *Heidmar*, ¶ 22.02 does not express the parties' intent the S.D.N.Y be the parties' "exclusive" forum such that attachment proceedings may not be brought here. *See* (*id.*) (requiring any "disputes and/or claims . . . be submitted to the United States District Court for the Southern District of New York); *Teyser*, 583 F. Supp. at 1271 (dismissing attachment and posted security where forum selection clause stated all "disputes . . . shall be determined in Korea *to the exclusion of the courts of any other country*"); *Liverpool & London S.S. Prot. & Indem. Ass'n, Ltd. v. Islas Galapagos Turismo Y Vapores, C.A.*, No. 97-1837-CIV-MARCUS, 1997 WL 900841, at *3 (S.D. Fla. Oct. 15, 1997) (agreeing with *Teyser*'s holding that the forum selection clause in the Washington case "evince[ed] the kind of express intent" required by *Polar Shipping Ltd.* and finding, in contrast, that the contract before the court incorporated rules dictating only where the merits were to be adjudicated and refusing to

7

vacate the attachment); *Heidmar*, 2011 WL 5827300 at *2, 6 (vacating Rule B attachment where contract stated "Each party expressly submits to the *exclusive jurisdiction* of the Federal and State courts located in the State of New York" and distinguishing the case from *Polar Shipping Ltd.* on the basis the clause referred to "the exclusive jurisdiction" of courts in the State of New York) (emphasis added).

Accordingly, the Court rejects Defendant's argument that ¶ 22.02 requires dismissal of this proceeding.

Last, Defendant argues that the Court should dismiss the attachment on equitable grounds because of the pending New York Action. (Dkt. No. 10 at 4-5). Defendant cites *China National Chartering Corp. v. Pactrans Air & Sea Inc.*, 589 F. Supp. 2d 403 (S.D.N.Y 2008) in support of this argument. As Plaintiff points out, however, *Pactrans* did not involve dismissal of a Rule B attachment because of a forum selection clause or even a Rule B attachment brought to obtain security for a claim being litigated elsewhere. (Dkt. No. 15 at 10). Rather, it concerned equitable vacatur of a maritime attachment under Rule E(4)(F)—relief Defendant did not move for here. Further, in a later decision, the *Pactrans* court held that the forum selection clause providing for arbitration in a foreign jurisdiction did not warrant vacatur of a Rule B attachment. *China Nat. Chartering Corp. v. Pactrans Air & Sea Inc.*, No. 06 CIV. 13107(LAK), 2009 WL 1403882, at *1 (S.D.N.Y. May 18, 2009).

Accordingly, the Court denies Defendant's motion to dismiss this action.

      **b.**    **Plaintiff's Motion to Deposit Funds**

The Court now addresses Plaintiff's motion to require Defendant to deposit U.S. Treasury Check No. 4039-37002560, in the amount of $280,220.37, issued pursuant to Release of Registry Funds in civil action 2:20-cv-334, into the Registry of the Court. (Dkt. No. 16).

Plaintiff argues Defendant should deposit the attached funds with the Court because the property is at substantial risk of being lost. (Dkt. No. 16 at 2). Plaintiff fears the treasury check will go "stale" after a year or be destroyed by "an Act of God." (*Id.*). Plaintiff further notes the funds will earn "no interest" if not cashed whereas they would earn interest if deposited into the Court's Registry. (*Id.*). Plaintiff cites specific Supplemental Rules for Certain Admiralty and Maritime Claims and case law to support its position.

Defendant opposes. Defendant notes the check is valid to and including June 23, 2023, over five months away and that, in any event, the check remains in the safekeeping of garnishees Cooper and Bilbrey PC, officers of this Court. (Dkt. No. 18 at 1-2). Defendant then argues, relying on Florida and South Carolina law, that because the check has not been "presented" for deposit, the funds represented by the check remain the property of the "United States (and/or this Court, since the money is or was in this Court's Registry from the U.S. Marshal's sale), which is not and cannot be a garnishee." *Contra Clearfield Trust Co. v. United States*, 318 U.S. 336, 366-67 (1943) ("The rights and duties of the United States on commercial paper which it issues are governed by federal rather than local law."); *S.C. Loveland Co., Inc. v. Trident Maritime Co., Ltd.*, Civ. A. 95-711, 1995 WL 92392, at *2 (E.D. Pa. Mar. 6, 1995) (approving service of a Rule B writ of attachment on the clerk of the court and noting that plaintiff's counsel decided to obtain jurisdiction over the defendant by attaching funds that were in the court registry). Defendant concludes that garnishee Cooper and Bilbrey PC hold only "a paper check—not the money of the United States Treasury" and "no authority support[s]" Plaintiff's "demand that this Court order [the] transfer [of] money from the United States to 'Cooper and Bilbrey PC' 'John Hughes Cooper, Esquire' and then to this Court's Registry for the purpose of Platina's Rule B attachment." (Dkt. No. 18 at 4-6). Additionally, Defendant argues that it lacks authority to endorse the check itself for deposit

9

in the Court registry, (Dkt. No. 18 at 2-3) (citing 31 C.F.R. § 240.13), stating the Court, "in order to have the check deposited into this Court's Registry, would have to require the payee ('Cooper and Bilbrey PC' 'John Hughes Cooper, Esquire') to endorse the check to the Court – and then the Court present the check for payment by the United States. Or, this Court would have to order that 'Cooper and Bilbrey PC' 'John Hughes Cooper, Esquire' first deposit the check to their client trust account – thereby presenting the check to the United States for payment - and then write a further check from their account to this Court's registry." (*Id.* at 3). Defendant argues no such authority exists to require Defendant take either action.

The Court grants Plaintiff's motion to deposit funds. Two Rules authorize this Court to order the subject funds be deposited in the Court's registry. Rule E(10) states, "**Preservation of Property.** When the owner or another person remains in possession of property attached or arrested under the provisions of Rule E(4)(b) that permit execution of process without taking actual possession, the court, on a party's motion or on its own, *may enter any order necessary to preserve the property and to prevent its removal*." (Emphasis added). Rule B(3) provides that, "If the garnishee admits any debts, credits, or effects, they shall be held in the garnishee's hands or paid into the registry of the court, and shall be held in either case subject to the further order of the court." Defendant admits it holds U.S. Treasury Check No. 4039-37002560, in the amount of $280,220.37, which is the subject of the attachment.[2] The plain text therefore of Rule B(3), if not also Rule E(10), grants the Court authority to direct Defendant to deposit the funds into the Court

---

[2] To the extent Defendant argues it is not in possession of the attached funds but its attorneys are, the Court rejects the argument. *See Chestnut Shipping Co. v. T-3 Freight, Ltd.*, No. 94 CIV. 1952 (PKL), 1995 WL 75485, at *2 (S.D.N.Y. Feb. 22, 1995) ("No valid reason has been advanced for making an exception to the general rule that payment to an attorney [Cooper and Bilbrey PC] of a claim which he is empowered to recover or collect operates as payment to the client [Defendant] ... absent specific contrary arrangements.").

registry. In fact, despite Defendant's contention to the contrary, in *S.C. Loveland Co., Inc.*, the court ordered nearly the identical relief Plaintiff seeks here. 1995 WL 92392, at *2 (writ of attachment served on law firm directed it, as garnishees of the check, to pay a sum certain (less than the face value of the check) into the court's registry).[3]

Accordingly, Plaintiff's motion to deposit funds is granted.

### III.     Conclusion

For the reasons set forth above, the Court **DENIES** Defendant's motion to dismiss. (Dkt. No. 10).

The Court further **GRANTS** Plaintiff's motion to deposit funds (Dkt. No. 16). Within 10 business days of the issuance of this order, "Cooper and Bilbrey PC" "John Hughes Cooper, Esquire" shall deposit the subject check to their client trust account and then write a further check from their account to the Clerk of this Court for $280,220.37. The Clerk of Court shall accept such check and shall deposit such funds into the registry of the Court, to be held pending further orders from the Court regarding the proper distribution of such funds. The deposit shall be placed in an interest-bearing account.

**AND IT IS SO ORDERED**

January 17, 2023
Charleston, South Carolina

---

[3] In *Loveland*, law firm Clark, Ladner represented different clients in two unrelated cases. In the former case, Clark, Ladner represented the plaintiff and, as part of that representation, learned defendant Adriatic Tankers would receive settlement funds. Clark, Ladner also represented a company called Loveland in a subsequent, unrelated action brought against, *inter alia*, Adriatic Tankers. In the subsequent action, Clark, Ladner sought and obtained a writ of attachment under Rule B of funds from a Treasury Check issued in the earlier action—facts analogous to those here. *Loveland*, 1995 WL 92392, at *2; *see* (Dkt. No. 1 at 1-6).

<u>s/ Richard Mark Gergel</u>
Richard Mark Gergel
United States District Judge

2:22-cv-01851-RMG     Date Filed 01/17/23     Entry Number 20     Page 12 of 12